UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

CAROLYN J. O'LEARY, individually
and on behalf of all other similarly
situated individuals,

    Plaintiff,

v.                                      Case No. 1:17-cv-01774-WCG

HUMANA INSURANCE COMPANY and
HUMANA INC.,

    Defendants

---

**MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION FOR APPROVAL OF
FLSA COLLECTIVE ACTION SETTLEMENT**

---

## Table of Contents

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

I. Summary of Litigation ...................................................................................................1

    A. Pleadings ............................................................................................................1

    B. The Court Approved Conditional Certification and Notice; More than 200 Nurses Opted In ............................................................................................2

    C. Discovery in this Case Was Extensive and Hotly Contested................................2

    D. Defendant's Motion to Decertify the Class Was Denied......................................3

II. After Repeated Efforts at Mediation Failed, the Parties Finally Reached Settlement ......................................................................................................................3

    A. Mediation ............................................................................................................3

    B. Settlement Amounts, and Allocation and Distribution of Damages......................4

    C. Releases, Unclaimed Checks ...............................................................................4

ARGUMENT................................................................................................................................. 5

I. The Proposed Settlement Should Be Approved Because it Is a Fair and Reasonable Resolution of a *Bona Fide* Dispute. ...........................................................5

    A. A *Bona Fide* Dispute Exists between the Parties.................................................5

    B. The Settlement Fairly and Reasonably Resolves the Disputes. .............................6

    C. The Settlement Was the Product of Good Faith, Arm's-Length Negotiations by Experienced Counsel through a Qualified Mediator. ..................7

II. The Separately-Negotiated Attorneys' Fees and Costs Are Reasonable and Should Be Fully Awarded ..............................................................................................8

    A. The Requested Attorneys' Fees and Costs Were Negotiated *After* the Damages Were Settled. .........................................................................................8

    B. The Fees Are Less Than One-Third of the Total Settlement Amount.....................9

    C. The Requested Fees Are Less Than Plaintiffs' Counsel's Lodestar......................10

    D. The Requested Amount Is Reasonable in Light of Plaintiffs' Counsel's Experience and Ability, the Considerable Risk They Undertook, and the Excellent Result Achieved. .................................................................................11

III. The Court Should Approve the Service Payments in Recognition of Exceptional Contributions................................................................................................................12

    A. The $15,000 Award for the Sole Named Plaintiff Is Justified..............................13

    B. The Smaller Awards for Class Members Who Gave Testimony Supporting the Action Are Appropriate...............................................................14

CONCLUSION............................................................................................................................ 15

# INTRODUCTION

With assistance from a third-party mediator, Defendants Humana Insurance Company and Humana Inc. ("Defendants" or "Humana") and Named Plaintiff Carolyn O'Leary (individually and on behalf of the opt-in class) have reached an $11.2 million settlement of this Fair Labor Standards Act ("FLSA") collective action. The settlement is on behalf of 221 clinical nurse advisors whom Plaintiff claims Humana misclassified as "exempt" employees and failed to pay for the overtime hours they routinely worked. Plaintiffs move the Court to approve the parties' settlement. Plaintiffs also request approval of the separately-negotiated attorney's fees and costs and of modest service awards for the Named Plaintiff and 10 class members.

As detailed below, the $11.2 million proposed settlement provides the class-member nurses an average of over $36,000 per nurse for unpaid overtime and liquidated damages for the less-than-three-year relevant time period. The settlement is an eminently fair and reasonable resolution of the Parties' disputes, and thus, approval should be granted.

# BACKGROUND

## I. Summary of Litigation

### A. Pleadings

On December 20, 2017, Carolyn O'Leary—a clinical nurse advisor employed by Humana—filed an FLSA collective action for herself and similarly-situated nurses who primarily performed utilization management functions for Humana. (*See* ECF No. 1.) She alleges that Humana had violated the FLSA, 29 U.S.C. § 201 *et seq.*, by misclassifying them as "exempt" from the overtime pay requirements of the FLSA and failing to pay them for the overtime hours they worked. (*See id.*) Defendants deny that they violated the FLSA. (*See* ECF No. 11.)

Defendants subsequently reclassified the nurses as non-exempt from the FLSA as of March 3, 2018, and began paying them for overtime hours worked. (ECF No. 15.) Thus, with the challenged practice ended, the damages period ended in March 2018.

### B. The Court Approved Conditional Certification and Notice; More than 200 Nurses Opted In

In June 2018, the parties jointly moved for conditional certification and class notice under Section 216(b) of the FLSA, ECF No. 22, and the Court conditionally certified the following class:

> All persons who were classified as exempt under the FLSA and worked as clinical nurse advisors for Defendants in the roles of Clinical Intake, Clinical Claims Review, Clinical Claims Review — DME, Acute Case Managers, or Market Clinical — Senior Products utilization management nurses, at any time within the three years prior to [June 14, 2018].[1]

(ECF No. 23, ¶1.) On two subsequent occasions, supplemental notice was approved and mailed to other nurses who were not included in the original class list, and more nurses joined the action. (ECF Nos. 252, 302.) In all, including the Named Plaintiff, there are 221 nurses in the class. (Eberle Decl., ¶6.)

### C. Discovery in this Case Was Extensive and Hotly Contested

The parties engaged in over three years of extensive and contested discovery, from March 2018 through June 1, 2021. (*See* Eberle Decl., ¶16.) Plaintiffs filed three motions to compel discovery and a motion to remove redactions of certain information,[2] all of them granted in whole or in part.[3] Plaintiffs' discovery was vigorous: they deposed six Humana officials; they

---

[1] The collective definition excluded individuals who had been mailed notices with opportunity to opt in to an earlier FLSA collective action, *Killebrew v. Humana Inc.*, Civil Action No. 5:16-cv-01276 (W.D. Tex., San Antonio Div.). (ECF No. 23, ¶1, n.1.)
[2] *See* ECF Nos. 69-1, 104, 110, 132.
[3] *See* ECF Nos. 81, 154, 192.

secured and reviewed hundreds of thousands of pages of documents related to Defendants' payment of extra compensation for extra work and the class members' duties; they analyzed payroll data showing Defendants' pay practices; they worked with their expert to analyze years of computer and telephone data showing overtime hours actually worked, and more. (*See* Eberle Decl., ¶16.) In addition, Plaintiffs worked directly with more than 200 class-member nurses on responses to written discovery regarding hours worked, complaints made, and extra compensation; and they prepared and presented O'Leary and nine representative class members for deposition. (*Id.*)

### D. Defendant's Motion to Decertify the Class Was Denied

Plaintiffs also resisted a motion by Humana to decertify the class the Court had conditionally certified. (ECF No. 203.) The Court denied that motion in November 2020, finding *inter alia* that Defendants had failed to show that "the issues of damages or defenses cannot be resolved on a collective-wide basis." (ECF. No. 248 at 16–17.)

## II. After Repeated Efforts at Mediation Failed, the Parties Finally Reached Settlement

### A. Mediation

Over more than two years beginning in December 2018, the parties had made a series of attempts at settlement through mediation. (Eberle Decl., ¶3.) Their attempts were unsuccessful—in large part due to the parties' disagreement over the formula the FLSA required for calculating overtime pay.

On May 17, 2021, after a series of consequential rulings on decertification, discovery, and the damages formula, the parties engaged a new mediator, Bill Baten of Van Winkle-Baten Dispute Resolution, and this time succeeded. (*Id.*, ¶4.) First, they reached an agreement in principle on the class members' damages on June 4, 2021. (*Id.*) Two weeks later, they reached agreement on Plaintiffs' attorney's fees and costs. (*Id.*) The parties then negotiated the

3

remaining settlement terms, which are set forth in a Stipulation of Settlement and Release of Claims (the "Settlement Agreement"). That Settlement Agreement, fully executed on September 7, 2021, is submitted now for the Court's approval. (*See* Ex. 1 to Eberle Declaration, Settlement Agreement.)

### B. Settlement Amounts, and Allocation and Distribution of Damages

Under the proposed Settlement Agreement, Humana will pay damages of $8,026,368.20. (*Id.*, ¶2.A.) Separately, Humana will pay attorney's fees and costs of $3.1375 million, *id.*, ¶2.B, which includes $150,881 in unpaid expenses and the remaining $2,986,619 for fees.

Damages will be apportioned among class members as follows: First, modest payments for indispensable service in pursuit of the lawsuit will be paid to the Named Plaintiff and 10 class members (totaling $43,000, as described in Argument, Section III, *infra*). The remaining damages ($7,983,368.20) will be allocated among the 221 nurses in proportion to the value of their claims, based on two factors: (1) the number of full-time weeks worked in a qualifying position within the relevant statute of limitations period, and (2) each Plaintiffs' salary level for those weeks.[4] (Eberle Decl., ¶6.) The administration and distribution of the settlement funds will be handled by a settlement administrator, at Defendants' expense. (Ex. 1, ¶¶2.B. & 9.)

### C. Releases, Unclaimed Checks

In exchange for the settlement payments, class members will release "all wage and hour claims based on actions through March 3, 2018 that were alleged, or could have been alleged," under the complaint in the matter, including but "not limited to the FLSA claims asserted under the alleged facts of the operative complaint and all state law claims that could have been asserted

---

[4] This information will be derived from the class members' payroll records and the amounts will be calculated by Plaintiffs' counsel's data expert.

4

under the alleged facts" of the complaint. (*Id*., ¶4.A.) Named Plaintiff O'Leary will additionally release wage and hour claims based on actions from March 3, 2018 to her September 3, 2021 signing of the Settlement Agreement. (*Id.*, ¶4.B.) If any settlement checks remain uncashed after the deadline to negotiate the checks, the settlement administrator will distribute the unclaimed funds to a *cy pres* recipient organization selected jointly by the parties. (*Id.*, ¶10.F.)

In the event the Court declines to approve any material provision of the Settlement Agreement, the Agreement, including the Plaintiffs' releases, will be null and void. (*Id.*, ¶12.)

**ARGUMENT**

**I.  The Proposed Settlement Should Be Approved Because it Is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.**

A court may approve a proposed settlement if it is "'a fair and reasonable resolution of a *bona fide* dispute' over FLSA provisions." *Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488, at *2 (E.D. Wis. Sept. 28, 2020) (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354–55 (11th Cir. 1982)). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (quotation marks, alteration, and citation omitted). This is such a settlement.

**A.  A *Bona Fide* Dispute Exists between the Parties.**

"A *bona fide* dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due." *Woods v. Club Cabaret, Inc.*, No. 1:15-CV-01213-JEH, 2017 WL 4054523, at *9 (C.D. Ill. May 17, 2017) (citation omitted). "The existence of a *bona fide* dispute serves as a guarantee that the parties

5

have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Id.* Numerous *bona fide* disputes exist here.

The parties dispute liability. Plaintiffs allege that Humana violated the FLSA by misclassifying them as exempt and failing to pay overtime. Humana denies it owes unpaid overtime, arguing the nurses at issue fall into at least one exemption from the FLSA. Further, the parties dispute the payment due. The parties dispute, among other things, how many hours were worked by Class Members, whether computer and phone data can be used to approximate hours worked, whether the standard overtime formula (1.5 times the Plaintiff's hourly rate) or the fluctuating-work-week method (0.5 times an hourly rate that varies depending on the number of hours worked) applies here to compute damages, whether the alleged violation was willful (a finding that increases the back pay damages period from two to three years), and whether liquidated damages were available. (Eberle Decl., ¶3.)

### B. The Settlement Fairly and Reasonably Resolves the Disputes.

Weighing the possible recovery against the risks of continued litigation, *Burkholder*, 750 F. Supp. 2d at 995, the settlement fairly and reasonably resolves the parties' disputes. The Class will receive more than $8 million in damages and service awards, with the average damages award exceeding $36,000. This is an exceptional, significant recovery for the nurses.

The $8 million damages amount falls roughly halfway between the amount of *full* unpaid overtime and liquidated damages for the 221 nurses calculated using the standard overtime formula (1.5 times the Plaintiff's hourly rate) and the amount using the fluctuating-work-week formula (0.5 times an hourly rate that varies depending on the number of hours worked), assuming 10 hours of overtime per full work week for the full three-year damages period. (Eberle Decl., ¶7.) Plaintiffs' compromise affords a fair and certain recovery, avoiding the

6

delay, expense, and risk that the anticipated summary judgment motions, expert discovery, and trial are sure to present.

### C. The Settlement Was the Product of Good Faith, Arm's-Length Negotiations by Experienced Counsel through a Qualified Mediator.

The mediation process that guided the parties to settlement further justifies approval. Negotiations were protracted. After two and half years' fits and starts, a new mediator's skillful assistance brought the parties, through weeks of telephonic shuttle mediation, to success. (Eberle Decl., ¶¶3–4.) "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (citation omitted).

Moreover, that experienced counsel *on both sides*—each side representing its clients with loyalty and vigor—have agreed on the proposed settlement provides further support for approval, as the court "is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 727 (E.D. La. 2008) (citation omitted). At least six attorneys from three national law firms actively represented Humana in its defense—attorneys from the Washington D.C firm of Constangy, Brooks, Smith & Prophete, the Los Angeles firm of O'Melveny & Myers, and the Chicago firm of Eimer Stahl. (*See* ECF Nos. 7–8, 74, 191, 245, 246.) Plaintiffs were represented by lawyers from Miner, Barnhill & Galland (MBG), a small but renowned, complex litigation firm with a nationwide practice. (*See* Eberle Decl., ¶2 & n.1.)

Here, counsel on both sides have assessed the benefits of settlement against the risks of continued litigation. And both sides have determined settlement is in the best interests of their respective clients. (Eberle Decl., ¶5.) This is a determination the Court may rely on in its evaluation of the settlement.

## II. The Separately-Negotiated Attorneys' Fees and Costs Are Reasonable and Should Be Fully Awarded

The separately negotiated fees and costs of $3.1375 million, which includes $150,881 in unpaid expenses and the remaining $2,986,619 for fees, should be approved as reasonable. "Title 29 U.S.C. § 216(b) entitles a prevailing plaintiff in a FLSA action to reasonable attorneys' fees and costs." *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003) (citing *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001)). *See also* 29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

The fees and costs are reasonable because (1) they were negotiated separately from the damages and do not diminish the amount to be distributed to class members; (2) the fees are only 26.8% of the total settlement amount, less than the normal one-third attorneys'-fees percentage routinely approved by courts, (3) the fees are less than Plaintiffs' counsel's lodestar, and (4) the risks incurred and results achieved by Plaintiff's counsel were substantial.

### A. The Requested Attorneys' Fees and Costs Were Negotiated *After* the Damages Were Settled.

The requested attorneys' fees and costs should be approved as reasonable given that the amount Humana has agreed to pay *does not diminish* the amount that will be distributed to class members. Negotiations were conducted in two steps—first the damages were decided. (Eberle Decl., ¶4.) By design, the parties agreed on the amount of damages for class members without knowing whether they would be able to agree on attorney's fees/costs or whether the Plaintiffs would have to file a petition for fees/costs and have the Court decide the amount. (*Id*., ¶8.)

The option for Humana to have the Court decide the fees/costs eliminated any possibility that the claim for attorney's fees and costs would undermine a fair settlement of the class

8

damages. (*Id.*) Fortunately, during the second step, the parties were able to agree on a reasonable amount for fees/costs, saving both the parties and the Court the time and resources involved in briefing and deciding a fee petition. (*Id.*, ¶9.)

But even if the parties had used a one-step process where a common fund was negotiated and Plaintiffs' counsel took their fees and costs from the fund, the amount requested would be reasonable. The $150,881 reimburses Plaintiffs' counsel for expenses paid that were necessary to successfully litigate the case, *see* Eberle Decl. ¶¶11–12, and as explained below, two benchmarks for examining fees taken from a common fund—the percentage of a common fund and the fees' relationship to the lodestar—show that the fees are reasonable.

### B. The Fees Are Less Than One-Third of the Total Settlement Amount.

The $2,986,619 for fees constitute only 26.8% of the total settlement amount. (*Id.*, ¶13.) This is less than the one-third proportion typically awarded as reasonable fees in FLSA collective action settlements when the fees are taken from a common settlement fund. *See, e.g.*, *Chen v. Genesco, Inc.*, No. 118 CV 00690 SEBTAB, 2020 WL 360517, at *5 (S.D. Ind. Jan. 22, 2020) (citations omitted) (approving one-third proportion as reasonable in FLSA collective action, listing other FLSA cases approving one-third proportion, and explaining "the request of one-third of the amount of the Fund is in line with terms regularly approved by federal courts in our Circuit"); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018) (same).

Moreover, under the Plaintiffs' retainer agreement, Plaintiffs' counsel are entitled to 33% of the total recovery, net expenses. (Eberle Decl., ¶14.) The $2,986,619 for fees is less than that amount. *See Burkholder*, 750 F. Supp. 2d at 997 (noting that one-third is "comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action"); *Scott*

9

*v. Memory Co., LLC*, 2010 WL 4683621 (M.D. Ala. Nov. 10, 2010) (settlement approved with attorneys' fees paid according to plaintiff's contingency agreement with his attorney).

### C. The Requested Fees Are Less Than Plaintiffs' Counsel's Lodestar

The $2,986,619 for fees is also less than Plaintiffs' lodestar. A below-lodestar fee supports its reasonableness. *Burkholder*, 750 F. Supp. 2d at 997 (N.D. Ind. 2010). *See also Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *3 (M.D. Fla. Oct. 28, 2011) (approving one-third proportion for fees and costs considering lodestar method would demand a higher fees and costs award); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (performing lodestar crosscheck and finding that fee request 1.88 times *higher than* lodestar was "quite reasonable" considering risk assumed and complexity of case).

When performing a lodestar crosscheck, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources," and counsel may simply submit the total amount of their fees and costs under a lodestar calculation. *Bredbenner*, 2011 WL 1344745, at *21–22 (citations omitted). *See also In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, *50 (D.N.J. Oct. 1, 2013) (citation omitted) ("[T]he abbreviated 'cross-check' does not constitute a 'full blown' lodestar calculation, and summaries may be relied on."). Assuredly, however, if requested by the Court, Plaintiffs will provide detailed records of their hours and costs.

Plaintiffs' counsel's unpaid lodestar to date is more than $3.68 million,[5] which reflects almost four years of work by Plaintiffs' counsel and MBG paralegals, described in the attached

---

[5] Pursuant to the Court's order, Plaintiffs' counsel were compensated for fees incurred in connection with Plaintiffs' successful sanctions motion. (*See* ECF No. 247.) The lodestar amount noted above is net of the amount received for the sanctions work. (Eberle Decl., ¶17.)

10

declaration, Eberle Decl., ¶16.  The $2,986,619 for fees is less than Plaintiffs' counsel's $3.68 million lodestar.

> **D.     The Requested Amount Is Reasonable in Light of Plaintiffs' Counsel's Experience and Ability, the Considerable Risk They Undertook, and the Excellent Result Achieved.**

Plaintiffs' counsel's experience and ability further justify the reasonableness of the fee. *See Rechtoris v. Dough Mgmt., Inc.*, No. 3:18CV708-PPS/MGG, 2020 WL 1041489, at *2 (N.D. Ind. Mar. 3, 2020) (experience, reputation, and ability of plaintiff's counsel supports reasonableness of award); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018) (considering experience of counsel in approving award). Plaintiffs' counsel and its firm, Miner, Barnhill & Galland, P.C., have a nationwide complex litigation practice across a range of substantive areas, including wage and hour, civil rights, environmental, and consumer protection. (Eberle Decl., ¶2.)  For example, Ms. Eberle and MBG represented numerous state attorneys general in complex litigation over fraud in the pharmaceutical industry, recovering nearly $1.2 billion through settlements and judgments for the states. (Eberle Decl., ¶2 n.1.)  Mr. Miller was part of an MBG team that recently served as lead counsel in *Freeman v. Grain Processing Corporation*, an environmental nuisance class action that settled in 2019 for $51.5 million after six years of contested litigation. (*Id.*)

These skills, experience, and commitment allowed MBG to take on the considerable risk of the hard-fought almost four-year battle in this case.  "The Seventh Circuit has recognized that counsel accept a risk of nonpayment when they embark on representation of a class of plaintiffs on a contingency fee basis," and the "award of attorneys' fee is to reflect the market price for legal services, in light of the risk of nonpayment …." *Id.* (quotation marks and citations omitted).  *Chen*, 2020 WL 360517, at *5 (citing *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007).  *See also In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*, 364 F.

11

Supp. 2d 980, 994 (D. Minn. 2005) ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees.").

Because of Plaintiffs' contingency fee arrangement, Plaintiffs' counsel risked receiving no compensation despite investing almost four years in the case. (Eberle Decl., ¶14.) And their litigation expenses, including mediation fees, filing fees, research charges, travel costs, and mass mailings to both putative class members and class members, remain out of pocket. (*Id.*, ¶12.) The risk of working almost four years for nothing in the event of unsuccessful litigation favors approval of the settled fees and costs as reasonable.

Finally, and fortunately, the result Plaintiffs' counsel have achieved was worth the risk. *See Rechtoris*, 2020 WL 1041489, at *2 (requested fee reasonable when considering the time, skill, and labor required, as well as the amount involved and results obtained). The substantial settlement amount—more than $8 million in damages exclusive of fees, averaging over $36,000 per class member—further supports the requested fee.

### III. The Court Should Approve the Service Payments in Recognition of Exceptional Contributions.

Eleven individuals' exceptional contributions to this case warrant approval of service awards beyond their individual allocations from the settlement—$15,000 for Named Plaintiff Carolyn O'Leary, $3,000 for the nine other class members deposed in this matter, and $1,000 for one class member who gave testimony in a declaration. Defendants have no objection to these proposed allocations. (Eberle Decl., ¶18.)

Courts routinely approve service awards, including in FLSA collective actions, if they are reasonable. *See McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, at *4 (S.D. Ill. Apr. 25, 2017) (citing *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012). "Incentive awards serve the important purpose of compensating plaintiffs for the time

and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016). In examining the reasonableness of such awards, courts are required to consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation." *Briggs*, 2016 WL 7018566, at *2. These factors justify the awards.

### A. The $15,000 Award for the Sole Named Plaintiff Is Justified.

District courts in this circuit have awarded individual incentive fee awards of up to $25,000. *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *5 (W.D. Wis. Sept. 5, 2014) (listing multiple cases with $25,000 awards for named plaintiffs). In comparison, the $15,000 award requested here for the Named Plaintiff is modest. As the sole named plaintiff, Ms. O'Leary has taken on exceptional responsibilities and burdens on behalf of the class, and the class has benefited tremendously. (Eberle Decl., ¶19.) Over the course of four years, she initiated this lawsuit, assisted with preparation of the complaint, met frequently with Plaintiffs' counsel, submitted information and documents for discovery requests not required of other class members, was deposed for a full day, attended (as assistant to Plaintiffs' counsel) numerous full-day depositions of Humana officials, attended court hearings, and participated in settlement discussions, including an in-person mediation in Chicago. (*Id.*) And as a current employee of Humana, she undertook the risk of adverse actions. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("awards are particularly appropriate in the employment context" when the plaintiff has "undertaken the risk of adverse actions by the employer or co-workers").

13

The requested award of $15,000 fairly and reasonably compensates Ms. O'Leary and is consistent with those approved for other named plaintiffs in similar cases. *See, e.g.*, *Briggs*, 2016 WL 7018566, at *2-3 ($12,500 each for collective action named plaintiffs who participated in pre-suit investigation, provided documents, participated in discovery (but were not deposed), and submitted declarations in support of conditional certification); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) ($15,000 award approved for each of 15 class representatives based on time, effort, and risk incurred).

### B. The Smaller Awards for Class Members Who Gave Testimony Supporting the Action Are Appropriate.

Awards for each of the other nine class members Humana deposed, as well as one class member who gave testimony in a declaration supporting Plaintiffs' sanctions motion, *see* ECF No. 178-5, are also justified. Each of the nine deponents met with class counsel for multiple hours to prepare for deposition, traveled to and from the deposition site, were deposed for multiple hours, and reviewed their deposition transcripts for accuracy. (Eberle Decl., ¶20.) The tenth class member stepped up to provide vital information by declaration, and subjected herself to the risk of being deposed. (*Id.*) Each of the ten took on the responsibility of offering testimony under oath. The testimony successfully supported Plaintiffs' position in multiple motions to compel, *see e.g.*, ECF No. 104 at 6, opposing the motion to decertify the class, ECF No. 218-1 at 4–5, and pursuing plaintiffs' motion for sanctions, ECF No. 176-1 at 8, 30. (*Id.*) Awards of $3,000 for each deponent and $1,000 for the declarant are fair and reasonable compensation for their time and effort, the benefit they provided the class, and the risks undertaken. *See Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3–4 (N.D. Cal. Feb. 11, 2016) ($6,000 for each of five class deponents and $1,000 to each of 20 class declarants).

14

## CONCLUSION

This $11.2 million FLSA collective action settlement is a product of arm's-length negotiations between counsel that has fairly and reasonably resolved *bona fide* disputes over overtime wages. With an average award over $36,000 across the 221 class members, the settlement provides meaningful relief. Accordingly, Plaintiffs request that the Court enter the attached proposed order approving the settlement agreement, including the damages for class members, approving the service awards as described above, awarding Plaintiffs' counsel the agreed-upon attorneys' fees and litigation costs, dismissing the action with prejudice, and retaining jurisdiction to enforce the terms of the Settlement Agreement.

Dated this 24th day of September, 2021.

s/ Elizabeth J. Eberle
Elizabeth J. Eberle, WI State Bar #1037016
beberle@lawmbg.com
Ryan Miller, WI State Bar #1115596
rmiller@lawmbg.com
MINER, BARNHILL & GALLAND, P.C.
44 E. Mifflin St., Suite 803
Madison, WI 53703
(608) 255-5200 (Telephone)
(608) 255-5380 (Facsimile)

**Attorney for Plaintiff and Collective Members**