UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

CAROLYN J. O'LEARY, individually
and on behalf of all other similarly
situated individuals,

    Plaintiff,

v.                                  Case No. 1:17-cv-01774-WCG

HUMANA INSURANCE COMPANY and
HUMANA INC.,

    Defendants

---

**DECLARATION OF BETTY EBERLE
IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF
FLSA COLLECTIVE ACTION SETTLEMENT**

---

1.      I am a partner in the law firm of Miner, Barnhill & Galland, P.C. (MBG). I have served as Plaintiffs' lead counsel in this matter since the case's inception in 2017. I submit this declaration in connection with Plaintiffs' motion for approval of (1) the collective action settlement, (2) the agreed-upon attorney's fees and costs, and (3) service awards for the Named Plaintiff and 10 class members who provided testimony in support of the action. The Defendants do not oppose the Motion.

2.      Plaintiffs' counsel and its firm MBG have a nationwide complex-litigation practice across a range of substantive areas, including wage and hour, environmental, civil rights, and consumer protection.[1] (*See* Plaintiffs' counsel's website, www.lawmbg.com.)

---

[1] For example, Ms. Eberle and MBG represented numerous state attorneys general in complex litigation over fraudulent pricing in the pharmaceutical industry, recovering nearly $1.2 billion through

## Mediation

3. Beginning in December 2018, the parties participated in two and half years of mediation that proceeded in fits and starts. Their attempts were unsuccessful. The parties disputed not only liability, but many other issues including how many hours were worked by Class Members, whether computer and phone data could be used to approximate hours worked, whether the standard overtime formula (1.5 times the Plaintiff's hourly rate) or the fluctuating-work-week method (0.5 times an hourly rate that varies depending on the number of hours worked) applies here to compute damages, and whether the alleged violation was willful (a finding which would increase the back pay damages period from two to three years), and whether liquidated damages were available.

4. On May 17, 2021, the parties engaged a new mediator, Bill Baten of Van Winkle-Baten Dispute Resolution, and his skillful assistance brought the parties, through weeks of telephonic shuttle mediation, to success. First, on June 4, 2021, they reached an agreement on the class members' damages. Two weeks later, they reached agreement on Plaintiffs' attorney's fees and costs. The parties then negotiated the remaining settlement terms, which are set forth in a Stipulation of Settlement and Release of Claims. (Ex. 1, "Settlement Agreement.")

5. Plaintiffs' counsel have assessed the benefits of settlement against the risks of continued litigation, and have determined settlement is in the best interests of the class members.

---

settlements and judgments for the states. (*See also* https://www.lawmbg.com/people/elizabeth-eberle.) Mr. Miller was part of an MBG team that recently served as lead counsel in *Freeman v. Grain Processing Corporation*, an environmental nuisance class action that settled in 2019 for $51.5 million after six years of contested litigation. (*See also* https://www.lawmbg.com/people/ryan-miller.)

### Payments to Class Members

6. Under the proposed Settlement Agreement, Humana will pay damages of $8,026,368.20. After payment of service awards totaling $43,000, *see* ¶¶18–20, *infra*, the remaining $7,983,368.20 will be allocated among the 221 nurses in the class, with an average award of just over $36,000. The allocation will be made in proportion to the value of their claims, based on two factors: (1) the number of full-time weeks worked in a qualifying position within the relevant statute of limitations period, and (2) each Plaintiffs' salary level for those weeks.

7. The $8 million settlement amount falls roughly halfway between the amount of *full* unpaid overtime and liquidated damages for the 221 nurses calculated using the standard overtime formula (1.5 times the Plaintiff's hourly rate) and the amount using the fluctuating-work-week formula (0.5 times an hourly rate that varies depending on the number of hours worked), assuming 10 hours of overtime per full work week for the full three-year damages period.

### Fees and Costs

8. Prior to negotiating with Mr. Baten, the parties agreed that if they were able to settle damages but not the attorney's fees/costs, the Plaintiffs would petition the Court for fees and costs. Thus, the parties agreed on the amount of damages for class members without knowing how Plaintiffs' counsel would be paid. The option for Humana to have the Court decide the fees/costs eliminated any possibility that the claim for fees/costs would undermine a fair settlement of the class damages.

9. On June 8, 2021, after the parties had settled the damages amount and still with the assistance of the mediator, the parties began negotiating the Plaintiffs' claim for attorney's

fees and costs. Fortunately, the parties were able to agree on a reasonable amount, $3.1375 million, to settle the claim.

10. Because of the two-step negotiation process used, the amount Humana has agreed to pay for fees/costs does not diminish the damages amount that will be distributed to class members.

11. The negotiated $3.1375 million total includes reimbursement of $150,881 in expenses Plaintiffs' counsel paid that were necessary to successfully litigate the case, itemized as follows:

| | |
|---|---|
| Airfare | $ 5,443 |
| Computer: Research/Data Proc | $ 43,328 |
| CopiTrak - B&W Copies | $ 1,163 |
| CopiTrak - Color copies | $ 2,276 |
| Court Reporting & Transcript | $ 21,235 |
| Data Expert: Soule | $ 37,600 |
| Document Purchase | $ 67 |
| Duplicating, Repro, Graphic | $ 686 |
| Ground Transportation | $ 1,332 |
| Internet/Email | $ 15 |
| Lodging | $ 4,712 |
| Meals | $ 1,202 |
| Mediation Fees | $ 22,852 |
| Messenger & Delivery | $ 99 |
| Online Research | $ 134 |
| Phone | $ 58 |
| Postage | $ 3,011 |
| Process Server | $ 360 |
| Video/Audio Rep & Dup | $ 5,308 |
| | $ 150,881 |

12. Plaintiffs' counsel have not been reimbursed for any litigation expenses.

13. The remaining $2,986,619 for fees constitute 26.8% of the total $11,163,868.20 settlement amount.

14. Under the Plaintiffs' retainer agreement with Ms. O'Leary, Plaintiffs' counsel are entitled to fees of 33% of the recovery after expenses are paid. The $2,986,619 fee amount is less than the amount to which Plaintiffs' counsel are entitled under the retainer agreement. The retainer agreement is a "contingent fee" agreement, meaning that no fees are paid to counsel unless there is a recovery in the case.

15. To date, Plaintiffs' unpaid lodestar is more than $3.68 million, *see* ¶¶16–17, *infra*, based on the following hours at the MBG rates[2]:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Eberle, Betty | $580 | 4,430.5 | $ 2,569,690 |
| Miller, Ryan | $340 | 2,780.1 | $ 945,234 |
| Siskind, Sarah E. | $680 | 131.8 | $ 89,624 |
| | | | *$ 3,604,548* |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Jekel, Lisa | $180 | 360.1 | $ 64,818 |
| Rogers, Christopher | $180 | 43.6 | $ 7,848 |
| Schepartz, Fred M. | $180 | 22.5 | $ 4,050 |
| | | | *$ 76,716* |
| | | | **$ 3,681,264** |

---

[2] The MBG rate schedule listing each attorney's complex litigation rates as of January 1, 2021, is attached as Exhibit 2. Per the MBG chart, the hourly rates for the two principal litigators, are $580 for Betty Eberle (1998 grad, Stanford Law School) and $340 for Ryan Miller (2017 grad, University of Pennsylvania Law School). The MBG hourly rate for Sarah Siskind (1977 grad, Harvard Law School) is $680.
    MBG's rate schedule is consistent with the U.S. Department of Justice Laffey matrix of hourly rates, which courts use as a reference to approve hourly rates under fee-shifting statutes allowing "reasonable" attorney's fees to prevailing parties. (*See* https://www.justice.gov/usao-dc/page/file/1305941/download.) Although the matrix is based on rates of attorneys practicing in the Washington D.C. area, such as Humana's attorneys from the Washington D.C firm of Constangy, Brooks, Smith & Prophete, district courts in this circuit utilize the Laffey matrix as a factor in determining reasonable rates. *See Moore v. Midland Credit Mgt., Inc*., 3:12-CV-166-TLS, 2012 WL 6217597, at *5 (N.D. Ind. Dec. 12, 2012).

16. Plaintiffs' counsel's lodestar represents almost four years of work, principally by Plaintiffs' counsel Betty Eberle and Ryan Miller and MBG paralegals, including:

- Pre-complaint investigation and drafting the complaint;

- Conditional class certification briefing;

- Managing the opt-in process following conditional class certification;

- Deposing six Humana executives, managers, and officials;

- Preparing the Named Plaintiff and nine other class members for depositions and defending the depositions;

- Over three years of extensive and contested discovery, from March 2018 through June 1, 2021, including:

  - ECF Nos. 69, 77, 89, 100 (compelling discovery regarding job duties/qualifications, hours expectations, reclassification documents, "hours" computer data, and *Schroeder* litigation documents);

  - ECF Nos. 104, 121, 138 (compelling discovery regarding policies on extra compensation for extra hours, willfulness, documents with the terms "overtime"/"40 hours," and time-stamped Avaya data for hours worked);

  - ECF Nos. 132, 151 (compelling discovery regarding payroll earnings codes);

  - ECF No. 85 (compelling Humana to verify its discovery requests);

  - ECF Nos. 110, 124 (compelling Humana to remove redactions);

  - ECF Nos. 131, 159, 162-1 (persuading and compelling Humana to unseal exhibits, their own attorneys' declarations, and an entire brief);

  - ECF Nos. 166, 181 (opposing motion for relief from the Court's discovery orders); and

  - Many of these motions entailed extended rounds of briefing, *see e.g.*, ECF Nos. 79-1 (Defs' Sur-Reply), 95 (Defs' Reply to Surreply), 128-1 (Defs' Surreply);

- Reviewing hundreds of thousands of pages of documents related to Defendants' payment of extra compensation for extra work and the class members' duties;

- Analyzing payroll data showing Defendants' pay practices;

- Working with their expert to analyze years of computer and telephone data showing overtime hours actually worked;

- Directly communicating with more than 200 class-member nurses on responses to written discovery regarding hours worked, complaints made, and extra compensation;

- Presenting arguments at numerous hearings with the Court (in-person and by phone);

- Limiting Humana's deposition discovery directed at the Class;

- Pursuing third-party discovery from Humana's vendor Avaya regarding missing telephone records;

- Opposing Humana's motion to decertify the class;

- Identifying putative class members left off the original putative class list and securing approval of supplemental notice;

- Moving the Court to approve a second supplemental notice, and facilitating the new class members' involvement in the case, ECF No. 301;

- Communicating with the 221 class members to confirm each of their dates of employment and their current addresses;

- Working with Plaintiffs' damages expert to create a formula to apply to the payroll records to allocate the damages amongst class members and to identify missing payroll records;

- Substituting parties for two deceased class members, ECF Nos. 308, 310–16;

- Negotiating the terms and language of the final settlement agreement;

- Preparing this motion for approval of the settlement; and

- Numerous attempts over two years at mediation, followed by success in 2021.

17. Pursuant to the Court's order, Plaintiffs' counsel were compensated for fees incurred in connection with Plaintiffs' successful sanctions motion. The lodestar amount noted

above is net of the amount received for the sanctions work. Plaintiffs have received no other compensation for their hours worked.

## Service Awards

18. Plaintiffs request approval for service awards for indispensable service in pursuit of the lawsuit be paid to the Named Plaintiff and 10 class members—$15,000 for Named Plaintiff Carolyn O'Leary, $3,000 for the nine other class members deposed in this matter, and $1,000 for one class member who gave testimony in a declaration, for a total of $43,000, which is 0.5% of the damages amount. Defendants have no objection to these proposed allocations.

19. As the sole named plaintiff, Ms. O'Leary has taken on exceptional responsibilities and burdens on behalf of the class, and the rest of the class has benefited tremendously. Over the course of four years, she initiated this lawsuit, assisted with preparation of the complaint, met frequently with Plaintiffs' counsel, submitted information and documents for discovery requests not required of other class members, was deposed for a full day, attended (as assistant to Plaintiffs' counsel) numerous full-day depositions of Humana officials, attended court hearings, and participated in settlement discussions, including an in-person mediation in Chicago. And as a current employee of Humana, she undertook the risk of adverse actions.

20. Each of the nine deponents met with class counsel for multiple hours to prepare for deposition, traveled to and from the deposition site, were deposed for multiple hours, and reviewed their deposition transcripts for accuracy. The tenth class member, Jennifer Towey, stepped up to provide vital information by declaration, and subjected herself to the risk of being deposed. Each of the ten took on the responsibility of offering testimony under oath. The testimony successfully supported Plaintiffs' position in multiple motions to compel, *see e.g.*,

ECF No. 104 at 6, opposing the motion to decertify the class, ECF No. 218-1 at 4–5, and pursuing plaintiffs' motion for sanctions. (ECF No. 176-1 at 8, 30.)

I certify under penalty of perjury that the foregoing is true and correct.

Dated this 24th day of September, 2021.

_____
Betty Eberle

9

Case 1:17-cv-01774-WCG   Filed 09/24/21   Page 9 of 9   Document 322